UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID CODREA, *et al.* )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>BUREAU OF ALCOHOL, TOBACCO )<br>FIREARMS AND EXPLOSIVES )<br>)<br>Defendant. )<br>) | Civil Action No. 15-0988 (BAH) |

DECLARATION OF MEGAN BENNETT,
CHIEF, FIELD MANAGEMENT STAFF
BUREAU OF ALCOHOL, TOBACCO. FIREARMS AND EXPLOSIVES

1. I am the Chief, Field Management Staff of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in Washington, D.C. In this position, I am responsible for, among other things, supervising ATF's hearing officer program. I have been with ATF since 1997, and an Industry Operations Investigator since 1999. During my ATF career, I have served in various managerial and supervisory positions including Director, Industry Operations for the ATF Dallas and San Francisco Field Divisions. I have also held several positions in Bureau headquarters.

2. I am making this declaration in connection with the Freedom of Information Act (FOIA) lawsuit in the above captioned case. I am familiar with the complaint and the plaintiff's request for ATF data in this case.

3. The purpose of this declaration is to explain the basis for ATF's decision to withhold portions of a document used to train ATF hearing officers and how the release of the withheld information could reasonably be expected to circumvent future enforcement proceedings.

1

4. The Department of Justice has statutory responsibility to enforce Federal firearms laws. *See* 28 USC § 599A. These responsibilities were delegated to ATF through 28 CFR Subpart W. ATF is a criminal and regulatory enforcement agency within the Department of Justice and is responsible for, among other things, enforcing Federal firearms laws including the Gun Control Act of 1968 (GCA), 18 U.S.C. Chapter 44, as amended. The GCA established a licensing system for persons engaged in the business of manufacturing, importing, or dealing in firearms.

5. The GCA, and its implementing regulations, found at 27 CFR Part 478, provide ATF with the authority to hold a hearing if requested by an applicant or licensee upon receipt of a Notice of Denial or Revocation. If, after a hearing, the Director of Industry Operations (DIO) decides not to reverse his or her decision to deny an application or revoke a license, the aggrieved party may file a petition in the United States district court for a de novo review of the denial or revocation.

6. Agency hearings under the GCA are not subject to the formal proceeding standards set forth in the Administrative Procedure Act (APA), 5 U.S.C. § 554(a), as such standards do not apply to "a matter subject to a subsequent trial of the law and facts de novo in a court" and are only applicable when the governing statute specifies that an agency must conduct a "hearing on the record" as opposed to a statutory requirement of a "hearing" or "full hearing."

7. Pursuant to authorities vested in the Director, ATF, through 28 USC § 599A and 28 CFR Subpart W, ATF is authorized to designate hearing officers for Federal Firearms Licensee (FFL) denials or revocations. In my role as Chief, Field Management Staff, I have been delegated that authority.

8. Hearing officers are selected either from a pool of ATF employees who have specialized knowledge of the firearm laws, or from individuals contracted by ATF to serve as a special hearing officer. The selection of a hearing officer is dependent upon a number of factors, including the nature of the underlying case. A hearing officer will be selected who has no prior knowledge of the underlying case and has had no interactions with the party or their

licensed operations. In most cases, the assigned hearing officer will come from outside the ATF field division in which the licensed business, or application, is located.

9. The redactions set forth on pages 2199 and 2223-2225 are contained within portions of documents entitled "Hearing Officer Training." These trainings are conducted to provide ATF employees or contractors who may be tasked with the duty to perform as a hearing officer with guidance and instruction on how to fulfill that particular duty. The redacted portions are contained under the following two sections: "What type of evidence establishes knowledge and intentional disregard of statutes and regulations?" and "What type of evidence establishes a licensee's plain indifference to the requirements of the law?"

10. The Hearing Officer Training documents in question examine these two specific areas; as the legal thresholds set forth by the courts for the revocation of a license is well documented and ATF must prove willfulness through a "purposeful disregard" or "plain indifference to the recordkeeping requirements."

11. Specifically, under each of the two aforementioned subparts, ATF includes some examples of what a hearing officer may consider as evidence to support either of these elements. The examples are used to help guide the hearing officer in their review process and are not as Plaintiff suggests "things [which] are proven he must confirm the revocation." It is no different than the way in which certain factors may be used to help show negligence or other legal constructs in other types of hearings. For example, one of the redacted evidentiary items listed for consideration relates to very specific statements a licensee may have made during a regulatory inspection.

12. It also imperative to note that, during a license revocation process, the hearing officer is neither the final arbitrator nor "adjudicator" as plaintiff suggests. Rather, based on the evidence provided at a hearing, the hearing officer prepares a factual report summarizing the proceeding. That report is forwarded to the DIO who is the sole entity empowered to make a decision on a license denial or revocation. As such, any of the evidence provided by the government, which may or may not include factors set forth on pages 2199 and

2223-2225, become well known to the licensee prior to any final decision on the status of the license.

13. Furthermore, as the hearing officer is employed and trained by ATF, it is important to remember that the release of this information affects not only the hearing officers, but even more importantly, the regulatory industry operations investigators who utilize certain techniques to secure evidence of a willful violation.

14. Plaintiff's contention that the redactions set forth on pages 2199, and 2223-2225 amount to "secret law" is not supported by any factual data or actual events, but instead is based solely on assumption. Furthermore, I believe that the release of such information would jeopardize ongoing or future criminal investigations or regulatory inspections as it would permit licensees the ability to circumvent the regulatory enforcement process, and specifically, be able to conceal the fact to ATF investigators that they are knowingly and intentionally disregarding the law.

15. The use of these evidentiary criteria to assist in supporting the willfulness of a licensees actions is critical. Release of such information would have an adverse impact on the Bureau's mission to regulate FFLs as stated in the GCA, and reduce gun related crime, as mandated by Congress. I believe there is an unquestionable harm of circumvention to the regulatory process if this data were to be released. However, if ATF was compelled to release the data under FOIA, then such release could reasonably be expected to interfere with pending and prospective enforcement proceedings. If FFLs gain this knowledge, they could destroy evidence of regulatory violations or change their pattern of behavior in attempting to avoid detection, thus interfering with a regulatory proceeding to revoke the Federal firearms license in question for GCA violations. In my ATF experience, I am aware of instances where FFLs have destroyed or otherwise attempted to cover-up their GCA violations in order to avoid detection, including instances where FFLs have been prematurely tipped off that ATF was examining their operations to ensure compliance with the GCA. Providing the public, to include FFLs, with information on how to circumvent the regulatory enforcement process would have disastrous effects.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on the 19th day of July 2016.

*Megan Bennett*
Megan Bennett
Chief, Field Management Staff
Bureau of Alcohol, Tobacco, Firearms and Explosives