UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID CODREA, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>BUREAU OF ALCOHOL, TOBACCO,<br>FIREARMS AND EXPLOSIVES,<br><br>　　　　　　　Defendant. | Civil Action No. 15-0988 (BAH)<br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

The plaintiffs, David Codrea, Len Savage and FFL Defense Research Center,[1] filed this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the Bureau of Alcohol, Tobacco, Firearms and Explosive ("ATF") challenging four pages in two versions of the same document that were withheld under FOIA Exemption 7(E) from a total of 6,875 pages produced in response to the plaintiffs' original FOIA request. Pending before the Court is the ATF's Motion for Summary Judgment, ECF No. 13, which, for the reasons discussed below, is granted.

## I. BACKGROUND

The plaintiffs submitted a FOIA request, dated March 12, 2015, to the ATF for six categories of records, including, as pertinent here:

> 1. Any instructions, policies or guidance given to agents who serve as hearing officers, or to their superiors, in connection with

---

[1] The complaint describes Mr. Codrea as "an internet blogger who disseminates information relating to firearms law issues," Compl. ¶ 3, ECF No. 1; Mr. Savage as "a Federal Firearms Licensee," *id*. ¶ 4; and FFL Defense Research Center as "a not-for-profit corporation established with the purpose of obtaining and distributing information to Federal Firearms Licensees relating to compliance with the laws and regulations which govern their business," *id*. ¶ 5.

1

>determining whether an FFL's license should be revoked or suspended, or issuance of a license be denied, or a civil fine imposed.

Compl., Ex. 1 (FOIA Request, Dated March 12, 2015), ECF No. 1. When the ATF failed to respond, the plaintiffs initiated this lawsuit on June 23, 2015.

Over the next nine months, the ATF made four rolling productions of responsive records to the plaintiffs, releasing 943 pages on December 14, 2015; 1,044 pages on December 23, 2015; 476 pages on December 30, 2015; and 4,412 pages on March 15, 2016. Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem."), Decl. of Stephanie M. Boucher, Chief, Disclosure Div., ATF ("Boucher Decl."), ¶¶ 6–9, ECF No. 13-1; s*ee also* Pl.s' Notice (March 28, 2016), ECF No. 12 (advising the Court that the ATF "completed processing plaintiffs' FOIA request" on March 15, 2016). The plaintiffs initially challenged withholdings on 31 pages associated with Bates-stamped numbers 2197-2227 from the December 30, 2015 production, *see* Boucher Decl. ¶ 10, but have now winnowed the contested withholdings down to only four pages from two documents with Bates-stamped numbers 2199, 2223–25, Pls.' Opp'n Def.'s Mot. Summ. J. ("Pls.' Opp'n") at 2, ECF No. 14.

Document 1, containing contested page 2199, is described in the Vaughn Index as a "Lesson Plan Overview for Hearing Officer Training," entitled "Basis for Revocation—Willful Violations," dated "May 2001," and Document 5, containing the other three contested pages, 2223–25, has the same title but a later date of "March 2010." Def.'s Mem. Ex. G ("ATF Vaughn Index"), ECF No. 13-1. Both Documents 1 and 5 are different versions of a training guide used in "a training course designed for hearing officers who preside over administrative regulatory proceedings where the Government and the Federal Firearms Licensee present all relevant evidence and arguments regarding the denial or revocation of a license or permit." Boucher Decl. ¶ 23. The small portions withheld from these two versions of the training guide are the

2

answers to two questions: (1) "What type of evidence establishes knowledge and intentional disregard of statutes and regulations?" and (2) "What type of evidence establishes a licensee's plain indifference to the requirements of the law?" Pls.' Opp'n, Ex. (Excerpts from Documents 1 and 5) at 5, 11–13, ECF No. 14-1.  The answers to these questions were withheld and redacted from the production to the plaintiffs under FOIA Exemption 7(E) because "[d]isclosure of how [the] ATF determines if a Federal Firearms Licensee has violated the Gun Control Act or its regulations, and whether the violations were willful, would provide bad actors with a means to circumvent the law by avoiding detection of willful violations/actions by, or on behalf of, the Federal Firearms Licensee."  ATF Vaughn Index at 1, 2.  The plaintiffs' only challenge to the ATF's response to their FOIA request is to the agency's invocation of Exemption 7(E) to withhold these four pages.

The ATF's application of FOIA Exemption 7(E) to withhold these four contested pages is analyzed below.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "In FOIA cases, 'summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'"  *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)).  Indeed, the D.C. Circuit has observed that

"the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

In litigation challenging the sufficiency of "the release of information under the FOIA, 'the agency has the burden of showing that requested information comes within a FOIA exemption.'" *Public Citizen Health Research Group v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999) (quoting *Niagra Mohawk Power Corp. v. U.S. Dept. of Energy*, 169 F.3d 16, 18 (D.C. Cir. 1999).); *see also DOJ v. Landano*, 508 U.S. 165, 171 (1993) (noting that "[t]he Government bears the burden of establishing that the exemption applies" (citing 5 U.S.C. § 552(a)(4)(B))); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989) (same); *Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 7 (D.C. Cir. 2014) (same). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Judicial Watch*, 715 F.3d at 941 (quoting *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011)); *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).

### III.   DISCUSSION

As noted, the four disputed pages were withheld under Exemption 7(E), which the plaintiffs contend "is inapplicable to these documents." Pls.' Opp'n at 3. The plaintiffs are incorrect.

**A. The ATF Properly Applied FOIA Exemption 7(E)**

Exemption 7 protects from disclosure "'records or information' . . . 'compiled for law enforcement purposes,'" but only to the extent that disclosure reasonably could be expected to result in one of the six enumerated harms "described in the lettered subsections of Exemption 7." *Sack v. U.S. Dep't of Defense*, 823 F.3d 687, 694 (D.C. Cir. 2016) (quoting 5 U.S.C. §

552(b)(7)); *see also Milner v. Dep't of the Navy,* 562 U.S. 562, 581 (2011) ("Exemption 7 . . . protects 'information compiled for law enforcement purposes' that meets one of six criteria, . . . ." (quoting 5 U.S.C. § 552(b)(7))); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 156 (1989) ("Exemption 7 requires the Government to demonstrate that a record is 'compiled for law enforcement purposes' *and* that disclosure would effectuate one or more of the six specified harms." (internal citation omitted) (emphasis in original)); *Public Emples. for Envtl. Responsibilty v. United States Section, Int'l Boundary & Water Comm'n ("PEER"),* 740 F.3d 195, 202–03 (D.C. Cir. 2014) ("To fall within Exemption 7, documents must first meet a threshold requirement: that the records were 'compiled for law enforcement purposes.'" (quoting 5 U.S.C. § 552(b)(7))). Consequently, "judicial review of an asserted Exemption 7 privilege requires a two-part inquiry" that considers: "[f]irst, a requested document must be shown to have been an investigatory record 'compiled for law enforcement purposes'"; and, second, "[i]f so, the agency must demonstrate that release of the material would have one of the six results specified in the Act." *FBI v. Abramson*, 456 U.S. 615, 622 (1982).

**1. The Disputed Records were Compiled for Law Enforcement Purposes**

With respect to the threshold requirement of showing that the disputed records were compiled for law enforcement purposes, courts "are more deferential to the agency's claimed purpose for the particular records" when "the agency's principal function is law enforcement," and will "scrutinize with some skepticism the particular purpose claimed" when "the agency has mixed law enforcement and administrative functions." *PEER,* 740 F.3d at 203 (quoting *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002)). In this case, the ATF is a "criminal and regulatory" law enforcement agency located within the U.S. Department of Justice, with responsibility for enforcing Federal firearms laws, including Gun Control Act of 1968 ("GCA"),

18 U.S.C. §§ 921–30, the Federal explosives laws, 18 U.S.C. Ch. 40, and the National Firearms Act, 26 U.S.C. Ch. 53.  Boucher Decl. ¶ 21; *see also* Def.'s Reply Supp. Mot. Summ. J. ("Def.'s Reply"), Decl. of Megan Bennett, Chief, Field Management Staff, ATF ("Bennett Decl."), ¶ 4, ECF No. 16-1.

The GCA requires anyone who wishes to 'engage in the business of . . . dealing in firearms' to obtain a license from [the] ATF," *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 203 (D.C. Cir. 2013) (quoting 18 U.S.C. § 923(a)), which licensees "are known as FFLs and must comply with various provisions of the GCA," *id.*; *see* Bennett Decl. ¶ 4 (stating that GCA "established a licensing system for persons engaged in the business of manufacturing, importing, or dealing in firearms").  When an FFL or applicant for an FFL is denied a license or has a license revoked, the aggrieved party may request a hearing, Bennett Decl. ¶ 5, which is held before a hearing officer "selected either from a pool of [the] ATF employees who have specialized knowledge of the firearm laws, or from individuals contracted by [the] ATF to serve as a special hearing officer," *id*. ¶ 8.  The contested four pages are contained in two documents designed for hearing officer training, which is "conducted to provide [the] ATF employees or contractors who may be tasked with the duty to perform as a hearing officer with guidance and instruction on how to fulfill that particular duty." *Id*. ¶ 9.  Informed by the evidence gathered at the hearing and the report of the hearing officer, the Director of Industry Operations ("DIO") makes a determination whether to reverse the decision denying an FFL application or revoking an FFL license.  *Id*. ¶ 5; Def.'s Reply at 3, ECF No. 16.  An aggrieved party may then file a petition in the United States district court for a *de novo* review of the denial or revocation. Bennett Decl. ¶ 5.

Records created in connection with hearings carried out by the ATF under the GCA in order to determine whether an applicant for a firearm license was properly denied a license or an FFL's license was properly revoked, are plainly compiled to further the law enforcement purposes of the GCA by ensuring that firearm licenses are awarded consistent with statutory and regulatory requirements.  The plaintiffs dispute this conclusion, arguing that a hearing officer, for whom the training guide was designed, "does not serve as a law enforcement or prosecutorial official," Pls.' Resp. at 3, such as "carrying out an investigation, or handling a prosecution," *id*. at 4, but rather in "an adjudicatory role," *id.* at 4.  The ATF counters that a "hearing officer is not an adjudicator," since the DIO makes the final decision on denial or revocation.  Def.'s Reply at 3; Bennett Decl. ¶ 12 ("It [is] also imperative to note that, during a license revocation process, the hearing officer is neither the final arbitrator nor 'adjudicator' as plaintiffs suggest.  Rather, based on the evidence provided at a hearing, the hearing officer prepares a factual report summarizing the proceeding.  That report is forwarded to the DIO who is the sole entity empowered to make a decision on a license denial or revocation.").

In any event, the plaintiffs' proposed interpretation of the threshold requirement for the application of Exemption 7 is overly narrow.  The D.C. Circuit has made clear that "[l]aw enforcement entails more than just investigating and prosecuting individuals *after* a violation of the law," and encompasses "the act of enforcing the law, both civil and criminal." *PEER*, 740 F.3d at 203 (emphasis in original).  Indeed, "[a]s Justice Alito explained in his important concurrence in *Milner*, the 'ordinary understanding of law enforcement includes . . . proactive steps designed to prevent criminal activity and to maintain security.'" *Id*. (quoting *Milner*, 562 U.S. at 582 (Alito, J., concurring)).  Since the disputed pages are compiled to assist hearing

officers in the process of enforcing the GCA, the ATF has demonstrated that the withheld four pages meet the threshold requirement for invocation of FOIA Exemption 7.

### 2. The Disputed Pages Satisfy the Two Subsections of Exemption 7(E)

Next, having met the threshold requirement, to establish that disclosure of the withheld information would cause the specific harm set out in Exemption 7(E), "the Government must demonstrate (i) that the withheld records or information 'would disclose techniques and procedures for law enforcement investigations' and (ii) that their disclosure would reasonably 'risk circumvention of the law.'" *Sack*, 823 F.3d at 694 (quoting 5 U.S.C. § 552(b)(7)(E)). The "requirement that disclosure risk circumvention of the law 'sets a relatively low bar for the agency to justify withholding.'" *PEER,* 740 F.3d at 205 (quoting *Blackwell v. FBI*, 646 F.3d 37, 42). The agency "must demonstrate only that release of a document might increase the risk 'that a law will be violated or that past violators will escape legal consequences.'" *Id.* at 205 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)). "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown*, 562 F.3d at 1194).

To demonstrate that the two-pronged requirements of Exemption 7(E) are met, the ATF's declarants explain that the withheld answers to the two questions in the training guide reveals "the specific criteria for determining willful violations" of the GCA. Boucher Decl. ¶ 24. This information is "not widely known to the public" and "any disclosure could limit their [sic] future effectiveness of regulatory investigations and inspections" by providing "bad actors . . . with a means to circumvent the law by avoiding detection of the various actions that involve willfulness

on behalf of the Federal Firearms Licensee." *Id*. The withheld information includes "examples of what a hearing officer may consider as evidence to support" a finding of willfulness through a "purposeful disregard" or "plain indifference to the recordkeeping requirements," warranting revocation of a license. Bennett Decl. ¶¶ 10–11. In this way, the withheld information relays information about the types of evidence sought in law enforcement investigations and thereby "necessarily would disclose information about the underlying techniques and procedures themselves." *Sack*, 823 F. 3d at 694 (finding Department of Defense reports on whether a particular agency's polygraph procedures were effective properly withheld under FOIA Exemption 7(E)).

Furthermore, the withheld four pages set out examples of "very specific statements a licensees may have made during a regulatory inspection," Bennett Decl. ¶ 11, and disclosure "would permit licensees the ability to circumvent the regulatory enforcement process, and specifically, be able to conceal the fact to [the] ATF investigators that they are knowingly and intentionally disregarding the law," *id*. ¶ 14. The ATF's declarant stresses that "[i]f FFLs gain this knowledge, they could destroy evidence of regulatory violations or change their pattern of behavior in attempting to avoid detection, thus interfering with a regulatory proceeding to revoke the [FFL] in question for GCA violations." *Id*. ¶ 15. In short, "[p]roviding the public, to include FFLs, with information on how to circumvent the regulatory enforcement process would have disastrous effects." *Id*.

Notwithstanding these detailed and specific descriptions by the ATF of the risks posed by disclosure of the withheld four pages, the plaintiffs argue that the agency has not met its burden because "Defendant does not suggest how revealing examples of what are considered willful violations would have any effect—except to guide people who want to *avoid* such violations."

Pls.' Opp'n at 5 (emphasis in original).  This argument is short-sighted.  While examples of the type of evidence probative of willful violations might be helpful as guideposts for law-abiding people, the plaintiffs ignore the obvious risk that descriptions of inculpatory evidence invites non-law-abiding people to prioritize making that evidence disappear.

The D.C. Circuit has instructed that the "'risk circumvention of the law' requirement applies to records containing 'guidelines,'" as well as to "records containing techniques and procedures."  *PEER*, 740 F.3d at 205 n.4 (citing *Blackwell*, 646 F.3d at 41–42)).  The withheld four pages appear to qualify as both guidance to the ATF hearing officers implementing the GCA licensing scheme and reveal law enforcement techniques for ferreting out GCA violations.  Consequently, the ATF has met the last requirement of FOIA Exemption 7(E).

### B.     Segregability

The D.C. Circuit has "long held, that '[t]he focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material.'"  *Nat'l Ass'n of Criminal Def. Lawyers v.  DOJ Exec. Office for U.S. Attys*., 844 F.3d 246, 256 (D.C. Cir. 2016) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)) (alteration in original).  Thus, "[e]ven when FOIA exemptions apply, '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.'"  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (quoting 5 U.S.C. § 552(b)).  The Court must "make specific findings of segregability regarding the documents to be withheld," *id.* (internal citations omitted), "even if the issue has not been specifically raised by the FOIA plaintiff," *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999) (internal citations omitted); *see also PHE, Inc. v. DOJ*, 983 F.2d 248, 252 (D.C. Cir.

1993) ("[A] district court clearly errs when it approves the government's withholding of information under the FOIA without making an express finding on segregability." (internal citation omitted)).

The ATF's declarant avers that the ATF "staff reviewed each page of the material identified as responsive to determine whether all non-exempt, reasonably segregable information was released to [the p]laintiffs." Boucher Decl. ¶ 26. As a result of this review, all available non-exempt, reasonably segregable information has been provided to [the p]laintiffs." *Id.* The plaintiffs' opposition is silent on the matter of segregability, *see generally* Pls.' Opp'n, and, consequently, has not offered any rebuttal to the "presumption that [the government] complied with the obligation to disclose reasonably segregable material." *Sussman*, 494 F.3d at 1117. Based on the ATF's supporting declaration, the Court concludes that the agency adequately specified "which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

## IV. CONCLUSION

The ATF has properly withheld the four disputed pages under FOIA Exemption 7(E). No material fact is genuinely disputed as to the agency's compliance with the FOIA and, accordingly, the ATF is entitled to summary judgment.

An Order consistent with this Memorandum Opinion granting the ATF's motion for summary judgment is issued separately.

Date: March 7, 2017

_____
BERYL A. HOWELL
Chief Judge