UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID CODREA, *et al.*,

                  Plaintiffs,

                  v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,

                  Defendant.

Civil Action No. 15-0988 (BAH)

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiffs, David Codrea, Len Savage, and FFL Defense Research Center, have filed a Motion for Award of Attorney's Fees, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E), Pls.' Mot. for Att'y's Fees ("Pls.' Mot.") at 1, ECF No. 20, stemming from the plaintiffs' underlying FOIA request for documents regarding federal firearms from the defendant Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). *Id.*, Pls.' Stmt. of Facts ("Pls.' SOF") ¶ 1, ECF No. 20.[1] Within twelve months from submitting the FOIA request and nine months from the plaintiffs' initiation of this lawsuit, ATF disclosed, in whole or in part, 6,875 documents, which disclosures fully discharged the agency's obligations under the FOIA and entitled ATF to summary judgment in its favor. *See Codrea v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 239 F. Supp. 3d 128, 130 (D.D.C. 2017). In light of this timing of ATF's production of responsive records, the plaintiffs contend that they are the prevailing party

---

[1] The complaint describes Mr. Codrea as "an internet blogger who disseminates information relating to firearms law issues," Compl. ¶ 3, ECF No. 1; Mr. Savage as "a Federal Firearms Licensee," *id*. ¶ 4; and FFL Defense Research Center as "a not-for-profit corporation established with the purpose of obtaining and distributing information to Federal Firearms Licensees relating to compliance with the laws and regulations which govern their business," *id.* ¶ 5.

1

and are both eligible and entitled to the attorney's fees and costs demanded. *See* Pls.' Mot. at 1–5. For the reasons set forth below, the plaintiffs' motion is denied.

**I.     BACKGROUND**

In March 2015, the plaintiffs submitted their FOIA request to ATF requesting six categories of records regarding federal firearms. *Codrea,* 239 F. Supp. 3d at 130. ATF did not respond to the request within 20 days, as required by the FOIA, *see* 5 U.S.C. § 552(a)(6)(A)(i), prompting the plaintiffs, in June 2015, to file this lawsuit, seeking disclosure of the requested records. *Id.* Over the course of the next six months, ATF gathered documents responsive to the FOIA request and conferred with the plaintiffs "in order to try and narrow the request in a way that would make" the searches "more productive." Jt. Mot. for Ext. of Time to File Status Rpt. (Sept. 14, 2015) at 1, ECF No. 8. ATF also diligently processed thousands of pages of responsive documents, and made rolling productions to plaintiffs. *See* Jt. Meet and Confer Stm. (Sept. 30, 2015) at 1, ECF No. 9 (noting that "the agency is still currently processing plaintiff's [sic] FOIA request," with "approximately 5,300 pages" located that "will take three months to process"); Jt. Status Rpt. and Mot. Extend Time (Dec. 30, 2015) at 1, ECF No. 11 (noting that "ATF has been unable to complete the processing as originally estimated" but has made "periodic productions" to plaintiffs); Jt. Meet and Confer (March 28, 2016) at 1, ECF No. 12 (noting that ATF "made its fourth and final production of documents" on March 15, 2016). Between December 2015 and March 2016, the ATF produced, in whole or part, 6,875 pages of responsive documents. Def.'s Mem. of P. & A. in Opp'n to Pls.' Mot. Att'y's Fees ("Def.'s Mem."), Attach. 1, Declaration of Peter J. Chisholm, Acting Chief, Disclosure Division, ATF ("ATF Decl.") ¶ 7, ECF No. 26-1. In their cross-motions for summary judgment, the parties disputed whether ATF properly withheld four pages, and summary judgment was granted to ATF

and denied to the plaintiffs, upon the Court's finding that ATF had properly withheld the four disputed pages under FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E), because the disputed records were compiled for law enforcement purposes. *Codrea*, 239 F. Supp. 3d at 132–135.

The plaintiffs now seek an award of $13,234 in attorney's fees, pursuant to 5 U.S.C. §552(a)(4)(E). Pls.' Mot. at 1, 6.

## II.    LEGAL STANDARD

When a plaintiff in a FOIA lawsuit "has substantially prevailed," 5 U.S.C. § 552(a)(4)(E), "reasonable attorney fees and other litigation costs" may be awarded. The determination of whether the plaintiff "has substantially prevailed" involves "a two-pronged" approach. *Clemente v. FBI*, 867 F.3d 111, 120 (D.C. Cir. 2017) (citing *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011)). A court evaluates, first, whether the plaintiff "substantially prevailed," such that the plaintiff is "eligible" for attorney fees, *Brayton*, 641 F.3d at 524, and, "if so," then evaluates "whether certain factors suggest the plaintiff is entitled to attorney fees," *Clemente,* 867 F.3d at 120. Thus, to obtain attorney fees under the FOIA, the plaintiff must demonstrate both eligibility and entitlement to the award. *See id; see also McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014); *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984).

To satisfy the eligibility requirement for attorney's fees, claimants must show that they "substantially prevailed" in the underlying FOIA litigation by gaining relief from either: "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.* § 552(a)(4)(E)(ii). When attorney's fees are awarded solely due to a change in an agency's position, such fees may be justified by the "catalyst theory," under which "a plaintiff

3

'substantially prevailed' not only when he obtained an official disclosure order from a court, but also when he substantially caused the government to release the requested documents before a final judgment." *Brayton*, 641 F.3d at 524–25; *accord Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010) ("FOIA plaintiffs [are] eligible for a fee award if the lawsuit substantially caused the agency to release the requested records."); *Burka v. U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286, 1288 (D.C. Cir. 1998) (holding that party claiming attorney's fees "must first establish eligibility by showing that the lawsuit was reasonably necessary and the litigation substantially caused the requested records to be released"); *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981) (holding that whether a party "substantially prevailed" is "largely a question of causation," asking "did the institution and prosecution of the litigation *cause* the agency to release the documents obtained during the pendency of the litigation?" (emphasis added)).[2]

## III. DISCUSSION

ATF contends that the plaintiffs meet neither prong of the applicable test for FOIA attorney's fees. The plaintiffs rely on the catalyst theory to argue that they substantially prevailed and are eligible for fees because ATF disclosed responsive documents only after the instant lawsuit was filed. Pls.' Mot. at 2–3. ATF counters that the plaintiffs' lawsuit did not trigger the production of responsive documents but rather "[t]he delay in processing Plaintiffs'

---

[2] The catalyst theory was utilized by this Circuit until 2001, when the Supreme Court held that "the 'catalyst theory' is not a permissible basis for the award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 610 (2001). Congress responded by resurrecting the catalyst theory for FOIA cases in the Open Government Act of 2007. *See Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010). "The purpose and effect of this law, which remains in effect today, was to change the 'eligibility' prong back to its pre-*Buckhannon* form." *Brayton*, 641 F.3d at 525. Although ATF claims "it is an open question whether the current OPEN Government Act regime is precisely identical to the pre-*Buckhannon* regime," *see* Def.'s Mem. at 3, "[t]he result is that plaintiffs can now qualify as 'substantially prevail[ing],' and thus become eligible for attorney fees, without winning court-ordered relief on the merits of their FOIA claims." *Brayton*, 641 F.3d at 525.

4

FOIA request was a result of being in [a] backlog and high priority redaction projects; the documents would have been processed in the same manner if litigation was not filed." ATF Decl. ¶ 14. As explained below, the record in this case shows that ATF is correct.

The plaintiffs cannot establish their eligibility as the prevailing party because they have not demonstrated that "the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation." *Church of Scientology*, 653 F.2d at 587; *see* also *Dorsen v. United States Sec. & Exch. Comm'n*, 15 F. Supp. 3d 112, 118 (D.D.C. 2014) (same); *Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42, 47 (D.D.C. 2012) (same). In the plaintiffs' view, despite the denial of their summary judgment motion contesting a mere four pages in thousands of responsive pages released, they are nevertheless "eligible" for an attorney's fee award because ATF "produced no documents prior to filing of the complaint," and "[t]he parties had to stipulate to repeated extensions of deadlines in order for the agency to comply and produce documents," amounting to 6,875 pages. Pls.' Mot. at 2.

Causation, however, requires more than correlation and, thus, in the context of FOIA attorney's fees, "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Weisberg,* 745 F.2d at 1496; *see also Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 205 (D.D.C. 2016) (same). Although timing is a relevant factor, something "more than *post hoc, ergo propter hoc* must be shown." *Pub. Law Educ. Inst. v. U.S. Dep't of Justice*, 744 F.2d 181, 183 (D.C. Cir. 1984). For example, an agency's delay in response until after a lawsuit is filed may be the result of factors having nothing to do with the filing of the lawsuit but instead with administrative delays due to backlogs of FOIA requests, the volume of responsive records requiring processing, the necessity of inter-agency searches and responses, or a combination of these factors. *See, e.g.*, *Church of Scientology*, 653 F.2d at 588

(explaining where "an unavoidable delay accompanied by due diligence in the administrative process was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in [its] suit") (quoting *Cox v. U.S. Dep't of Justice*, 601 F.2d 1, 6 (D.C. Cir.1979)) (internal citations omitted); *Short v. U.S. Army Corps of Eng'rs*, 613 F. Supp. 2d 103, 106 (D.D.C. 2009) ("The causation requirement is missing when disclosure results not from the suit but from delayed administrative processing.") (citing *Weisberg*, 848 F.2d at 1268–71); *Dorsen*, 15 F. Supp. 3d at 118 (same).

ATF has sufficiently described administrative issues due to backlogs that "delay[ed] . . . beginning work on plaintiffs' FOIA request." Def.'s Mem. at 7. ATF's "Disclosure Division was not able to respond within 20 business days due to a significant increase in FOIA related requests from the public and oversight entities, which has resulted in a backlog of FOIA requests submitted to the ATF." ATF Decl. ¶ 12. "In addition, at the time Plaintiffs submitted their FOIA request, the Disclosure Division was heavily involved with the review of approximately 20,000 pages of documents responsive to Judicial Watch v. U.S. Department of Justice (1:12-cv-01510) and drafting the Vaughn indices for those 20,000 pages." *Id.* ¶ 13. Furthermore, "[a]fter Plaintiffs submitted their FOIA request, the entire Disclosure Division got tasked with a high priority redaction project," and "[t]his project took the Disclosure Division six weeks to complete; thus, taking staff away from all other workloads." *Id.* According to ATF, "[t]he combination of the increase in FOIA requests, coupled with the additional work involved in the above two referenced matters, resulted in a significant increase in demand of the Disclosure Division's personnel and time resources." *Id.* ATF further emphasizes that the plaintiffs' request was "diligently processed" when the agency "was able to begin working on that request, and the delay was not unreasonably long." Def.'s Mem. at 6.

As ATF correctly observes, the "plaintiffs have done no more than show that they made a FOIA request and then filed the lawsuit before any disclosure of responsive documents was made." *Id.* This assertion is especially true, given that the plaintiffs fail to acknowledge that backlogs and difficulties in processing break any purported causal nexus between their initiation of a lawsuit and the subsequent production. Instead, the plaintiffs posit that they "inquired among persons who had made FOIA requests of Defendant, and found that their experience has been that (absent filing a lawsuit) requestors must wait years in hope of a response." Pls.' Reply Supp. Mot. Att'y's Fees ("Pls.' Reply") at 2, ECF No. 28. The plaintiffs' attempt to bolster this proposition that, absent a lawsuit, ATF usually takes much longer than nine to twelve months to process similar "complex" FOIA requests by presenting the declarations of two attorneys, who together have experience filing five FOIA requests with ATF. *Id.*; *see also id.*, Ex. 1, Declaration of Joshua Prince, Attorney at 1–2, ECF No. 28-1; *id.,* Ex. 2, Declaration of Stephen Stamboulieh, Attorney at 1–2, ECF No. 28-1. In contrast to the plaintiffs' waiting period for production of responsive records from ATF of nine to twelve months, the two attorneys describe waiting up to two or three years for responsive records, absent a lawsuit. Pls.' Reply at 2–3. Based on that comparison of waiting periods, the plaintiffs assert that "without a lawsuit Defendant does not comply with FOIA," and thus the lawsuit operated as a catalyst. *Id.* at 3.

The plaintiffs' comparison of waiting periods for responsive records does not satisfy their burden in this case for at least two reasons. First, the differences in waiting periods for production of responsive records to FOIA requests *not* at issue in this lawsuit may be due to a myriad of factors, which make those situations so unlike the instant one that the comparison is barely probative, if not misleading or unfair.

Second, and more importantly, in evaluating a catalyst theory for a plaintiffs' eligibility for FOIA attorneys' fees, the focus is highly contextual on what occurred in the lawsuit at issue, including consideration of the sufficiency of the agency's explanation for production delays, *see, e.g., Gerhard v. Fed. Bureau of Prisons*, No. CV 16-1090 (RDM), 2017 WL 2958603, at *5 (D.D.C. July 11, 2017) (noting that agency "offer[ed] no explanation for its failure to locate the records during its pre-litigation searches, leaving [plaintiff's] lawsuit as the only apparent candidate for what prompted the new search"); *Dorsen*, 15 F. Supp. 3d at 120 (observing that that agency made "no effort to argue that any administrative processing delays caused the delay in production of responsive records," which was "not a voluminous amount," and, consequently, applying catalyst theory), and the agency's efforts to provide and comply with good faith estimates of completion times, *see e.g., Elect. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 43 (D.D.C. 2016) (finding plaintiff eligible under the catalyst theory where agency's response to FOIA request reflected a "lack of transparency," requiring issuance of multiple stays and orders, including requiring the agency to "review a specific number of documents per month"). In the instant lawsuit, ATF fully explained both in connection with the plaintiffs' motion for attorney's fees and repeatedly during the course of litigation that the delays in its pre- and post-litigation searches were due to backlogs and the press of other work deadlines. In sum, the agency was transparent about the volume of records gathered for review as well as technical and other difficulties requiring additional time to process responsive records. The plaintiffs have not demonstrated that their litigation caused ATF to produce over 6,875 documents by March 2016, and thus the plaintiffs are not "eligible" for an award of attorney's fees.[3]

---

[3] This finding makes unnecessary any further consideration of the second prong, whether the plaintiff is entitled to a fee award.

## IV. CONCLUSION

For the reasons discussed above, the plaintiffs are not eligible for attorney's fees under § 552(a)(4)(E) because they have not "substantially prevailed."  Accordingly, the plaintiffs' Motion for Award of Attorney's Fees, ECF No. 20, is denied.  An appropriate Order accompanies this Memorandum Opinion.

Date: September 28, 2017

_____
BERYL A. HOWELL
Chief Judge